# Chester County Republican Nominations.

*Election law—Appeals—Certiorari—Facts—Record.*

On an appeal in an election contest where the facts appear upon the record, the Supreme Court will examine whether the judgment is correct upon such facts, and may for that purpose consider the opinion of the court as part of the record.

*Election law—Party rules—Appeals—Nominations.*

The statutes relating to primary elections and nominations make party rules the law of each particular case, and the authority of the courts as in the review of corporate or ecclesiastical elections and trials, is merely to see that the acting body proceeded regularly according to its own rules.

The rule of a party provided for a nominating convention to be composed of delegates from the different election districts. This convention was to be held at such time and place as might be fixed by the county committee. It was also provided that at the time and place the members of the party met to elect delegates to the convention, they should also "elect a member of the county committee for such district, for the ensuing year." Another rule provided that "the affairs of the party shall be managed by a county committee elected as aforesaid." The delegate elections were not held at any set date, but at "such time and place as may be fixed by the county committee." From the rules generally considered it appeared that the whole party machinery of party elections was centered in and to a large extent dependent upon the initiatory action of the county committee for the county and the committeeman for his district. *Held*, that the words "ensuing year" used in the rule relating to the election of the county committee, did not mean the calendar year, but did mean the political year, that is, the interval between one election and the next annual election which might be more or less than twelve calendar months.

Under the above rules an election for committeemen should be held each political year. If the electors should see or suspect a design on the part of the committee to postpone a new election for the perpetuation of their own power or other unlawful or insufficient reason, mandamus would lie to compel the committee to act.

Where the chairman of the county committee erroneously supposes that the terms of the committeemen have expired at the end of the calendar year, while as a matter of fact their term did not expire until the end of the political year which was subsequent in date to the end of the calendar year, his action in filling the supposed vacancies by reappointing the same persons, is nugatory, and any action of the committee after the termination of the calendar year and before the termination of the political year is valid by reason of their previously existing authority.

POTTER and MESTREZAT, JJ., dissent.

Argued Oct. 23, 1905.    Appeal, No. 295, Jan. T., 1906, by R. Thomas Garrett and others, candidates named in a certificate of nominations, from order of C. P. Chester Co., sustaining exceptions to said certificate of nomination filed by Thomas Lack and others.    Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN, and STEWART, JJ.    Reversed.

The court sustained the objections.

Objections to certificate of nominations.    HEMPHILL, P. J., filing the prevailing opinion from which BUTLER, J., dissented.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was the order of the court sustaining objections to the certificate.

*Alfred P. Reid* and *D. T. Watson,* for appellants.—This court has jurisdiction to inspect the whole record with regard to the regularity and propriety of the proceedings in the court below, and to determine whether the court below (1) exceeded its jurisdiction; or (2) its proper legal discretion; or (3) stated in other language, whether the court below have kept within the limits of the powers conferred and exercised them in conformity with law: Independence Party Nomination, 208 Pa. 108; Robb's Nomination, 188 Pa. 212; Pollard's Petition, 127 Pa. 507; Chase v. Miller, 41 Pa. 403; Appeal of Commissioners of Northampton County, 57 Pa. 452.

The record that the certiorari brings up includes the certificate of nomination, the objections to the nomination and the opinion of the court: Independence Party Nomination, 208 Pa. 108; Bryson's Road, 2 Penrose & Watts, 207.

The court below only had jurisdiction to ascertain whether the certificate of nomination had been filed " by the parties en-

titled under this act to file the same: " Independence Party Nomination, 208 Pa. 108; Kunkle on Pennsylvania Ballot Law, 62; Wyman's Nomination, 12 Pa. Dist. Rep. 210; Robb's & Marron's Nominations, 7 Pa. Dist. Rep. 577; McKim v. Somers, 1 P. & W. 297; Clark v. Com., 29 Pa. 129; Com. v. Smith, 45 Pa. 59.

The Chester county republican committee, when these nominations were made in September, was still legally in existence and the individuals who claimed to be members thereof were de jure as well as de facto such members: United States v. Alexander, 46 Fed. Repr. 728; Clark v. Com., 29 Pa. 129; McKim v. Somers, 1 P. & W. 297; People v. Cook, 8 N. Y. 67; Com. v. Smith, 45 Pa. 59; Campbell v. Com., 96 Pa. 344.

*C. Wesley Talbot* and *George B. Johnson*, with them *Wayne MacVeagh*, for appellee.

Opinion by Mr. Chief Justice Mitchell, October 26, 1905:

This proceeding, though under the confusing directions of the procedure Act of May 9, 1889, P. L. 159, called an appeal, is in fact a certiorari and must be so treated. The principles and practice by which this court is governed in such cases are fully discussed in Independence Party Nomination, 208 Pa. 108, and for present purposes may be stated to be that where the facts appear upon the record this court will examine whether the judgment is correct upon such facts, and may for that purpose consider the opinion of the court as part of the record.

In this case there is no difficulty or dispute about the facts. They appear on the face of the certificate and the objections filed, and we take them without change from the specific findings of the court below. It is contended that there were certain other facts in connection with other nominating papers which were before the court below but are not here. But they related to a separate matter and are not relevant or material to the question of the correctness of the decision appealed from.

The court's statement of facts, slightly condensed but otherwise unchanged, is as follows:

1. It is uncontroverted that on March 18, 1904, a county

committee was duly elected in the several districts, and was duly organized March 23 by the election of Mr. Ruth as chairman and two others as secretaries.

2. That as the committeemen were elected for one year their term of office expired on March 18, 1905, but the chairman, secretaries and treasurer held over until their successors should be elected.

3. That this county committee called primary elections to be held April 15, 1905, in the several districts of the county, for the purpose of electing delegates to a convention to nominate a county ticket, and also a member of the county committee, to serve for the ensuing year. Before the date for holding these elections had arrived many of the registered candidates had withdrawn their names, leaving no more than just sufficient to fill the various offices to be nominated, and on April 10, 1905, the chairman sent to each of the late committeemen a letter in which after quoting the Act of June 22, 1897, P. L. 179, as follows : " If any political party has, by its rules, provided for a registration of candidates for nominations, and at the time limited for such registration or at any subsequent time by reason of withdrawals or other cause there should be no more candidates for any office registered or remaining than are to be elected to such office, the person or persons so registered or remaining shall be deemed the nominee or nominees with the same effect as if he or they had been nominated by a convention or primary meeting or caucus or board. And one or more or all of the officers of the committee of such political party with which such registration shall be made or the officer with whom it is made shall make a certificate of such nomination in the same manner and with the same effect as if there had been a nomination by a convention or primary meeting or caucus or board," he notified them that " in consequence of this condition it will therefore not be necessary to hold a primary election on Saturday evening next, and a convention on Tuesday, April 18. I therefore notify you that said primaries and county convention will be abolished this year and the nominations will be certified by the county committee, in conformity with the aforesaid act of 1897."

4. On June 15, 1905, the chairman, in accordance with the

provisions of the act of June 22, 1897, and as announced in the above letter, certified the remaining registered candidates to the county commissioners as the nominees of the Republican party.

5. On April 15, 1905, the chairman, by the authority conferred upon him, as he claimed by rule 5, to " fill all vacancies in the county committee," reappointed each and all of the late committee, the committeemen for their respective districts.

6. The committee thus appointed met on April 18, 1905, and re-elected H. Morgan Ruth as its chairman, and William Taylor and J. Howard Coates as its secretaries.

7. On August 17, 1905, all the nominees, excepting the nominee for district attorney, withdrew their names from the certified ticket, and on the same day chairman Ruth called a meeting of his committee, resigned his office and Thomas Lack was elected chairman in his place.

8. At a meeting of the committee on September 26, 1905, called by Mr. Lack, nominations were made to fill the vacancies created by the withdrawal of those certified by Mr. Ruth on June 15, 1905, and the same were duly certified and filed with the commissioners by Mr. Lack on October 2, 1905. These are the nominations objected to in the present proceeding.

9. In the meantime, many republicans of the county dissatisfied with the management of their party affairs and especially with abolition of the primaries called for April 15, 1905, effected a new organization, in the manner detailed in the evidence of record, and in a convention duly called and held for the purpose on October 3, 1905, nominated a full county ticket to be voted for at the approaching election, and on October 4, 1905, Edward S. Darlington, the chairman of said convention and its secretaries certified and filed the same with the commissioners as the ticket of the republican party or policy, and now claim that it is entitled to the republican column on the official ballot.

The 9th finding sets out the facts alluded to as the ground of contention by appellees that all the facts before the court below are not now before us. But as already said they related to a separate matter. The court below held for reasons given that the nominations certified by Mr. Darlington on October

4, were not entitled to a place in the republican column on the ticket, and as there has been no appeal by those parties from his decision on that point it is not before us.

The statutes make the party rules the law of the case, and the authority of the courts, as in the review of corporate or ecclesiastical elections and trials is merely to see that the acting body proceeded regularly according to its own rules.

The rules of the republican party of Chester county appear among the uncontroverted facts on the record and the determination of this case depends upon their construction and application.   Those which are relevant to the present discussion are the following :

" Rule 2. The party should hold a convention to nominate a county ticket, a convention to elect delegates to the national and state conventions when necessary, and such other conventions as may become necessary, to all of which conventions these rules shall apply.

" Rule 3. The convention to nominate the county ticket to be composed of delegates from the different election districts of the county shall be held at such time and place as may be fixed by the county committee. . . ."

" Rule 4. On the Saturday next before the time for holding the nominating conventions the republicans of the respective election districts of the county shall assemble at the usual place of holding delegate elections, or at such place as shall be designated by the member of the county committee for the respective district, and elect by ballot the delegate or delegates to represent them in the nominating convention.   At the same time and place they shall elect a member of the county committee for such district for the ensuing year. . . ."

" Rule 5. The affairs of the party shall be managed by a county committee elected as aforesaid.   Ten members thereof shall constitute a quorum to transact business.   The county committee shall meet in West Chester for organization immediately after the convention for the purpose of nominating the county ticket has adjourned.   They shall elect a president who shall be styled chairman of the county committee.   They shall elect two persons as secretaries of the party, who shall audit the accounts of the former treasurer.   They shall elect one person treasurer who may be a member of the committee or

otherwise.    The chairman and officers of the preceding year shall act until their successors are elected. . . ."

" The chairman of the county committee shall fill all vacancies in the county committee by the appointment of another republican from the same district. . . ."

" The chairman of the county committee shall be the executive officer of the party in the county, and shall put in operation these rules, the resolutions and orders of the county committee, and of the nominating convention, and shall preside at all meetings of the committee. . . ."

" Rule 6.    The county committeeman of each district shall be the executive officer thereof, and organize it in such a way as to bring to the election the whole vote of the party. . . ."

" Rule 12.    Each candidate for nomination by the republican convention to nominate county officers shall be required to give his name and post office address and pay $5.00 to the chairman of the county committee not less than thirty days before the date fixed for the delegate elections. . . ."

" Rule 13.    In case of a vacancy by death, resignation or otherwise after the nominating convention of the party has been held, and before the next ensuing election, it shall be the duty of the chairman of the republican county committee to call together the members of the county committee, and the members thus assembled shall have power to fill such vacancies."

The crucial question now before us is the regularity of the county committee which filed the certificate of nominations which is objected to.    By rule 4 the primaries or delegate elections are to be held on the Saturday next before the nominating conventions, and the electors are then to elect delegates to represent them in the nominating convention, and " at the same time and place they shall elect a member of the county committee for such district for the ensuing year."    The learned president judge of the court below in his second finding held that the term of the committee duly elected, as is conceded, on March 18, 1904, expired on March 18, 1905, and the committee became functus officio on that day except the chairman, secretaries and treasurer, who held over under rule 5 till their successors should be appointed.    This part of the finding is a conclusion of law based on the interpretation of the phrase, " for the ensuing year," in rule 4, and was an erroneous con-

struction of the rule.  The " ensuing year " meant by the
rule was not the calendar but the political year, that is, the
interval between one election and the next annual election,
which might be more or less than twelve calendar months.
The delegate elections are not held at any set date, but at
" such time and place as may be fixed by the county commit-
tee." (Rule 3.) The time is in the discretion of the com-
mittee, and it is common knowledge that it varies in different
years, according to the exigencies or convenience of each year.
Thus in the years of election of the president, or the governor,
or other state officers, the date of county conventions is largely
dependent on the date of the national or state conventions,
while in years of election of county officers only the date is
governed by local convenience.  If a county election and con-
vention should be held, as it often is, in August of one year
and another in March in the next year, the new committee
would come into power at once and the term of the prior
committee would end, though it had lasted only seven months,
and vice versa, the term of a committee elected in March might
extend to August of the following year and thus cover seven-
teen months, if the date of the primary election should be so
fixed.

A brief consideration of the powers and duties of the county
committee will show that this is necessarily the intent of the
rules.  By rule 3 the time and place of the county convention
are to be fixed by the committee ; by rule 4, on the Saturday
before such date the electors are to assemble at the usual place
of holding delegate elections, " or at such place as shall be des-
ignated by the members of the county committee for the re-
spective district," and the committeeman shall call the assem-
bly to order, and they shall then proceed to elect a judge and
two inspectors, and to hold the election ; and by rule 6 " the
county committeeman of each district shall be the executive
officer thereof." It thus appears that the whole party ma-
chinery of party elections is centered, and to a large extent
dependent, on the initiatory action of the county committee
for the county and of the committeeman for his district.  If
the whole committee is liable to become officially dead at a
fixed date of exactly a calendar year after their election, then
the whole organization is in danger of being thrown into inex-

tricable confusion by the accidental or intentional or factional failure by the old committee to fix a date for the election of a new committee before the expiration of their own year.    The party will be helpless to proceed regularly under its own rules, for there will be no one with authority to make the calls or start the proceedings.    It is impossible to suppose that the party in framing its rules meant to subject itself to such obvious risks.    But, on the other hand, if the " ensuing year " was intended, as it must have been, to mean the political year, there is full provision for an organization always in existence ready for regular party action under the rules.

Testing the regularity of the nominations objected to, by the rule thus understood, it appears

1. That the committee elected in March, 1904, has not been superseded by any new committee subsequently elected, and is therefore still in office de jure as well as de facto.

2. That on June 15, 1905, the chairman of the committee regularly certified the names of the candidates, as authorized by the act of 1897.

3. That on August 17, 1905, the committee met and the chairman having resigned, elected a new chairman.

4. That on September 26, 1905, all the nominees certified to the county commissioners on June 15, 1905, excepting the nominee for district attorney, having previously withdrawn, the committee met and made nominations to fill the vacancies caused by these withdrawals.

5. That on October 2, 1905, the chairman of the committee duly certified these nominations to the county commissioners.

6. That the nominees so certified, the appellants, are the regularly nominated candidates of the party, and as such are entitled to the republican column on the official ticket.

Some collateral matters may be briefly noticed.

The chairman of the county committee acted within his authority under the act of 1897 (quoted in the third finding of fact by the court below) in dispensing with the county convention to make nominations, but he was mistaken in assuming that there was no occasion for district elections to elect a new committee.    Under rule 4 the two elections are to be held at the same time and place, but they are separate elections and involve separate rights of the electors.    The rule

requires the election for committeemen to be held at the time and place fixed by the committee, but it clearly contemplates an election each political year, and if the electors should see or suspect a design on the part of the committee to postpone a new election for the perpetuation of their own power or other unlawful or insufficient reason, mandamus would lie to compel the committee to act. In the present case no such action was taken by any elector and the action of the committee was acquiesced in so far as any contest in a regular way under the rules was concerned.

The chairman of the committee was also in error in supposing that the terms of the committeemen had expired, and in reappointing them on April 15, 1905. Under rule 5 he had power to fill all vacancies in the committee, whether one or all of the number, but as there were no vacancies his action was nugatory. Having reappointed the same persons, however, no trouble ensued. The committee acted and their action was valid by reason of their previously existing authority.

The judgment of the court below is reversed and the objections to the nominations directed to be dismissed.

POTTER and MESTREZAT, JJ., dissenting:

It is certain that the writ of certiorari does not lie to revise the decision of the court below upon matters of fact. And without conceding that the record proper in this case contains sufficient to give us jurisdiction to inquire into the merits of the question, we are clearly of the opinion that under a reasonable construction of the party rules the terms of the county committee men elected in March, 1904, expired at the time fixed for holding the meeting in April, 1905, to elect members for the then ensuing year.

Apparently no other construction than this, occurred to the mind of any one connected with the county committee, and the chairman showed that he so construed and understood the rule, by his action in attempting to appoint the members of an entire new committee to act from that date. It is suggested for the first time, in the opinion of the majority of this court, that the terms of the old committeemen were not limited to the ensuing year after their election, but, that they continued in office indefinitely, owing to the failure of a

convention to elect their successors in April, 1905.    With this view we cannot agree.    Rule 4 provides " that on the Saturday next before the time for holding the nominating convention, the republicans of the respective districts . . . . shall elect a member of the county committee for such district for the ensuing year."    In the present instance the time designated by the chairman for holding the convention was April 18, 1905, and the Saturday before was April 15, so that under the rule, the term of the committeemen elected for the previous year ended at that time.    And the chairman so understood it and appointed new .committeemen under his claim of right to fill vacancies.    It was this action which the court below held was unauthorized and illegal and we think the view taken by the court in this respect was right.    Clearly under the rules the county committee was an elective body to be chosen by the people of the districts, to serve only for the ensuing political year.    The power of the chairman to fill vacancies extended only to such as occurred in the elective body, and during the current year.    We can see no power given to him by the rules to appoint an entirely new committee, without submitting the choice of the membership to the votes of the people of the respective districts at the time fixed, under rule 4.

We would dismiss the assignments of error and affirm the proceedings in the court below.