## Rimer's Contested Election.   Geary's Appeal.

Argued September 25, 1934.   Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Charles Alvin Jones,* with him *Merritt H. Davis, D. J. Driscoll, Carl D. Smith* and *B. B. McGinnis,* for appellant.

*Raymond E. Brown* and *John C. Arnold,* with them *Lloyd F. Weaver,* for appellees.

OPINION BY MR. CHIEF JUSTICE FRAZER, November 26, 1934:

At the general election held November 7, 1933, for the office of judge of the Court of Common Pleas of the Eighteenth Judicial District, composed of Clarion County, Harry M. Rimer was the nominee of the Republican and Prohibition parties and Albert A. Geary the

nominee of the Democratic party. The official return indicated that Rimer received 6,660 votes and Geary 6,688 votes for the office. Accordingly Geary was returned as duly elected and a certificate of election issued to him. A petition on behalf of Rimer to contest the election, signed by more than fifty qualified electors of the county and accompanied by the affidavit of more than ten of them, in accordance with the provisions of section 6 of the Act of May 19, 1874, P. L. 208, was presented to the attorney general of the Commonwealth, who, being satisfied of its sufficiency, notified the governor. The latter, pursuant to the provisions of the statute referred to, directed the three president judges residing nearest the courthouse of Clarion County to convene without delay the court of common pleas of the county and proceed to hear and determine the complaint of the petition, and to decide which of the candidates received the greatest number of legal votes and is entitled to the office. The petition was filed December 9, 1933, and the court fixed December 26, 1933, as the time for the filing of an answer by respondent Geary. The principal fact relied upon by contestants, in support of the allegation of their petition that the election was undue and a false return thereof made, was a difference of 44 votes in favor of Rimer as shown by the election return for the first precinct of the Borough of East Brady and the recount of the ballots in the box for that district as made on December 2, 1933, by a recount board appointed upon petition of three qualified electors of the district under the Act of April 23, 1927, P. L. 360. Respondent's answer denied that at the time the recount was made the ballots in the box for this district were in the same condition as when cast by the electors of the district, and averred the ballots had been changed and altered, and that at the time the ballot box for the district was received by the recount board it bore evidence of having been tampered with. The trial of the contest by the specially created court was begun on January 19, 1934, and proceeded during several days. The

parties called numerous witnesses and considerable testimony was taken. Contestants also offered in evidence the ballots contained in the boxes for several districts in which a recount was had, particularly those from the first precinct of the Borough of East Brady, which were received over respondent's objection. The trial court, after consideration of all the evidence, filed a final order and opinion June 29, 1934, in which it decided that Rimer had received a greater number of legal votes than Geary, and was entitled to the office. From the order so made Geary has appealed to this court with allowance of supersedeas by the court below. Appellee's motion to quash the appeal has raised the vital issue of our jurisdiction in this type of case.

The Act of May 19, 1874, P. L. 208, under which the contested election proceedings in this case took place, makes no provision for an appeal in contests for judicial office. An Act of June 12, 1878, P. L. 204, allows an appeal to the Supreme Court "when the election of a judge of the Supreme Court, or a judge of any subordinate court of record, required to be learned in the law, shall be contested, if the trial and determination of such election contest shall involve the true construction of any provision of the Constitution, or if the decision shall depend on any question arising upon the Constitution." It is not seriously contended that any constitutional question is involved in the present appeal. Accordingly the case must be considered as if before us upon a writ of certiorari; but before we do so it may be well to restate the nature and scope of our review in cases of this character.

The authority of this court to review the proceedings of inferior tribunals in this Commonwealth by the common law writ of certiorari has been recognized for more than two hundred years. The Act of May 22, 1722, P. L. 131, not only expressly granted to the justices of the Supreme Court the right to issue writs of certiorari and other process, but also authorized them "to exercise the

jurisdictions and powers granted by the act as fully and amply, to all intents and purposes whatsoever, as the Justices of the Court of King's Bench, Common Pleas and Exchequer, at Westminster, or any of them may or can do." Subsequent enactments do not derogate from these powers but rather confirm and enlarge them. The Act of 1836, P. L. 784, gave to the court the right, "generally, to minister justice to all persons, in all matters whatsoever, as fully and amply, to all intents and purposes, as the said court has heretofore had power to do, under the Constitution and laws of this Commonwealth." Indeed, we have held that "the legislature lacks power to deny this court the right of issuing common law certioraris to test the jurisdiction of subordinate tribunals," although, in legislating as to methods of review, it may affect the exercise of that prerogative: Twenty-first Senatorial District Nomination, 281 Pa. 273, 278. In a recent case it was said: "Where a statute is silent on the right of appeal, this court may review the case in the broadest sense allowed on certiorari; but when the statute prohibits an appeal, the review is confined to questions of jurisdiction alone. ...... Though the legislature cannot take away our right at all times to examine a case on certiorari to ascertain whether or not the subject-matter is within the jurisdiction of the court below,—in other words, whether that tribunal has the power to act,—yet the scope of our inquiry on certiorari may be limited to that question, and this is done when the legislature denies the right of appeal": White Twp. School Directors App., 300 Pa. 422, 425-6. Inasmuch as the Act of 1874, supra, neither allows nor prohibits an appeal in election contests for the office of judge, our review should be "in the broadest sense allowed on certiorari." But how much latitude does this imply? It must be admitted that there has been considerable diversity of judicial opinion as to the exact rule to apply, and that as early as 1840 this court confessed there had been "some contrariety of decision in cases of

this kind." See Allison v. Delaware & Schuylkill Canal Co., 5 Wharton 482. In almost all the early cases the scope of our review on certiorari was limited to an examination of the record to see if the court below had exceeded its jurisdiction. In Com. v. Nathans, 5 Pa. 124, 125, GIBSON, C. J., pointed out that, "where a proceeding is according to a course provided by a statute, a certiorari lies to remove it into the King's Bench only after judgment, and for purposes of revision as to regularity." See also Carpenter's Case, 14 Pa. 486, and Union Canal Co. v. Keiser, 19 Pa. 134, in both of which the court declined to examine the merits of the case on certiorari. The some rule was stated in an opinion by COULTER, J., in Derry Overseers v. Brown, 13 Pa. 388, and applied by LOWRIE, C. J., in Ewing v. Filley, 43 Pa. 384. Many other cases to the same effect could be cited.

The first indication that the Supreme Court would look to the merits of the controversy in election cases came in Chase v. Miller, 41 Pa. 403, where the narrow rule theretofore applied was somewhat expanded, for the reason the parties had come before the court with an agreed statement of facts. In the Election Cases, 65 Pa. 20, AGNEW, J., reverted to the strict rule in writing the opinion of the court. This was in line with his earlier statements as to the scope of review by certiorari in Pennsylvania Railroad Co. v. Lutheran Congregation, 53 Pa. 445. It thus appears, that, with a few exceptions, where cases involving election contests came before this court upon certiorari, our review was limited to the examination of errors appearing on the face of the record, meaning, by that, the technical legal conception of the record, which included neither the testimony nor the opinion of the court below. So clearly was this understood that in 1882, in Carpenter's Appeal, 11 W. N. C. 162 (where the proceedings for an election contest were held under the same act involved in this case, i. e., Act of 1874, P. L. 208), in dismissing the appeal, the court said through SHARSWOOD, C. J.: "Upon a common law

certiorari, as this is, we can only examine the record to see if the court had jurisdiction and the proceedings were regular. This has been so often decided that it is to be hoped that sometime or other parties will leave off bringing such cases into this court, with the idea that they may get the proceedings reversed on the merits." In Lyon v. Dunn, 196 Pa. 90, which also was a contest for office of judge under the Act of 1874, supra, the court quashed the appeal in less abrupt language.

With the advent of the twentieth century, however, the court definitely broadened its review in election controversies. In Independence Party Nomination, 208 Pa. 108, MITCHELL, C. J., pointed out that proceedings on summary petition occupy a middle ground between common law actions and equity suits, and that, in a re-· view by certiorari, the appellate court may examine the opinion of the court below· to see the basis on which it acted. This rule had been virtually acknowledged in the earlier case of Robb's Nomination Certificate, 188 Pa. 212, but was there restricted in its application. In Chester County Republican Nominations, 213 Pa. 64, Chief Justice MITCHELL repeated his view that the opinion of the court below was open for inspection by the appellate court on certiorari, and by 1908 the principle had been applied in a contested election for the office of judge. Krickbaum's Contested Election, 221 Pa. 521. In Von Moss's Election, 219 Pa. 453, the court took cognizance of the facts stated in the lower court's opinion, but confined itself to a consideration of that court's jurisdiction and the regularity of the proceedings. The growing tendency of the court to make a broad review was well illustrated in Foy's Election, 228 Pa. 14, in which the opinion by MOSCHZISKER, J., states: "When the facts are ascertained, we have the right to correct all erroneous conclusions, judgments, or decrees based thereon." This ruling was cited and followed in Pfaff v. Bacon, 249 Pa. 297, where a full review was given, as was also done in Snodgrass's Case, 267 Pa.

494. In Cramer's Election Case, 248 Pa. 208, in which the opinion of the court was written by STEWART, J., we said (page 210) : "Under a certiorari, we have simply revisory power, and in the exercise of such power, while we may examine and revise the record for the purpose of seeing whether the court below exceeded its jurisdiction or its proper legal discretion, to the record we are confined; and as a result of this restriction, the actual merits of the case are not a subject of inquiry, and the evidence is therefore a matter wholly aside. Nevertheless, in election contests, because these occupy a middle ground between common law and proceedings in equity, the opinion of the court, though not strictly part of the record, is open to examination to discover the grounds of the court's action." The Cramer Case was cited with approval in Twenty-eighth Congressional District Nomination, 268 Pa. 313, in which, on a certiorari, we reversed the court below for its action in rejecting the entire vote of a precinct on appeal from a recount board, even though the statute under which the recount took place provided there should be no appeal to this court. The ground for our decision there was that the court of common pleas had exceeded its jurisdiction in the matter by deciding questions which could only be raised in an election contest. This action was in conformity with the statement of our authority, in cases where a statute prohibits an appeal, as set forth in White Township School Directors Appeal, supra.

The wide review which the court had reached in election cases by this time was not the result of the Act of 1889, P. L. 158 (which provided that "all appellate proceedings in the Supreme Court heretofore taken by writ of error, appeal or certiorari, shall hereafter be taken in a proceeding to be called an appeal"), for soon after its passage we held that "this act does not profess to extend the right of review, to change its extent in cases already provided for, or to modify in any manner

its exercise. It simply provides that dissimilar proceed-
ings shall be called by the same name": Rand v. King,
134 Pa. 641, 646; Gates v. Pennsylvania Railroad Co.,
154 Pa. 566. The scope of the court's review in con-
tested election cases was announced independently and
was not affected by the Act of 1889, as an examination
of the cases clearly shows.

As we have already indicated, by the year 1919 this
court had considerably expanded the original concep-
tion of the review to be accorded cases which came be-
fore it by writ of certiorari. In that year the General
Assembly passed an act which made possible even fur-
ther departures from the old rule. The Act of April
18, 1919, P. L. 72, provides: "In any proceedings here-
tofore or hereafter had in any court of record of this
Commonwealth where the testimony has been or shall
be taken by witnesses, depositions or otherwise, and
where an appeal has been or shall hereafter be taken
from the order, sentence, decree, or judgment, entered
in said proceedings, to the Superior or Supreme Court,
such testimony shall be filed in said proceedings, and
the effect of said appeal shall be to remove, for the con-
sideration of the appellate court, the testimony taken
in the court from which the appeal is taken, and the
same shall be reviewed by the appellate court as a part
of the record, with like effect as upon an appeal from
a judgment entered upon the verdict of a jury in an
action at law, and the appeal so taken shall not have
the effect only of a certiorari to review the regularity
of the proceedings in the court below."

In Plains Towsnhip Election Returns, 280 Pa. 520,
the scope of review on certiorari was restated and the
effect of the Act of 1919, supra, considered. It was there
held that under this act "we are enabled, by an exam-
ination of the record on certiorari, to see whether the
findings of the court below in a contested election case
are sustained by evidence, and to review the order or
decree appealed from, the same as if it had been entered

'on the verdict of a jury'; but the act is intended to apply alone to strictly judicial proceedings in courts of record, as such, and hence, does not serve to enlarge our powers of review over a computation proceeding." See Springdale Township Election Recount, 307 Pa. 312. It was also indicated in Twenty-first Senatorial District Nomination, supra, that the Act of 1919 could not operate to expand our jurisdiction in cases where the statute particularly states that no appeal shall be permitted. For other statements as to the effect of the Act of 1919, see Hand's Case, 266 Pa. 277; Pasquinelli v. Southern Macaroni Mfg. Co., 272 Pa. 468; Scranton v. Peoples Coal Co., 274 Pa. 63; Bedford v. Rosser, 283 Pa. 345; Sterrett v. MacLean, 293 Pa. 557.

It is unnecessary to cite further authorities and burden an opinion already grown too long. But we may briefly summarize the holdings of the decisions already mentioned, together with others not discussed,* as follows: Our cases concerning the nature of review on certiorari have not been entirely uniform, and there has been a gradual tendency, although occasionally resisted, to expand the scope of our consideration in this form. It is clear that our power to review by certiorari the proceedings of inferior tribunals cannot be taken away by statute, although where the legislature provides that the decision of a lower court shall be final, we are limited to a consideration of the jurisdiction of the court below and the regularity of the proceedings. In cases where the statute is silent upon the right of appeal, our review by certiorari is more extensive. In contested election cases we are at liberty to ascertain the facts which governed the decision from the opinion of the court below, and it is our duty under the Act of 1919,

---

* See Padden's Contested Election, 264 Pa. 183; Bright's Contested Election, 292 Pa. 389; Elwood City Borough's Contested Election, 286 Pa. 257; Walker's App., 294 Pa. 385; Bangor Electric Co.'s Petition, 295 Pa. 228. See also 5 R. C. L. 249-53.

P. L. 72, to examine the testimony to see if the findings of the trial court are supported by adequate evidence. We will not, however, weigh the evidence nor in other respects substitute our discretion for that of the court below, although, upon facts definitely ascertained, we will correct conclusions of law erroneously made.

What is the application of these principles to the situation presented by the case now before us? Appellant's counsel concedes that the sole question is the validity of the trial court's action in admitting in evidence the ballots cast in the first precinct of the Borough of East Brady, together with the box containing the same. It is strongly urged that the integrity of these ballots was not established by contestants, but, on the contrary, was discredited by the testimony of the election board for that precinct. These contentions, for the purposes of our review, cannot be substantiated. The court below found as a fact that the ballot box was delivered into the hands of its proper custodian by the judge of elections and was retained by him in substantial compliance with the law until surrendered to the recount board upon order of court. The court also found that the ballots in the box were the identical ones cast in the election, that they are the best evidence in determining the result of the election, and that they conclusively show that Rimer received a majority of the legal votes cast in the election. These findings are supported by adequate credible evidence, and, under the principles stated above, will not be disturbed by us.

The order of the court below is affirmed, costs to be paid by the County of Clarion.