Cora Hubbard WILLIAMS, Appellant,

v.

Cora Williams MURDOCH and Commonwealth Bank and Trust Company, a corporation.

No. 14401.

United States Court of Appeals Third Circuit.

Argued Oct. 21, 1963.

Decided April 20, 1964.

Paul Ginsburg, Pittsburgh, Pa., for appellant.

John Stewart, Philadelphia, Pa., for appellee; (Raspin, Espenshade, Heins, Erskine & Stewart, Philadelphia, Pa., Robert Duggan, Grier, Duggan, Hampsey & Ludwig, Pittsburgh, Pa., on the brief).

Before BIGGS, Chief Judge, GANEY, Circuit Judge, and NEALON, District Judge.

BIGGS, Chief Judge.

The plaintiff-appellant, Cora Hubbard Williams (Mrs. Williams), brought suit in the court below on October 20, 1962 at CA 62–833, pursuant to the provisions of 28 U.S.C. § 1331, basing jurisdiction upon the Constitution and laws of the United States and in particular on the Fourteenth Amendment, alleging that she was deprived of property and individual liberties without due process of law in proceedings brought and prosecuted pursuant to the Pennsylvania Incompetents' Estates Act of 1951, 50 P.S. § 1631 et seq.[1], in the Orphans' Court

---

1. The Pennsylvania Incompetents' Estates Act of 1951 provides, *inter alia:* § 1681 "(a) Resident. The court, upon petition and a hearing at which good cause is shown, may find a person domiciled in the Commonwealth to be incompetent and appoint a guardian or guardians of his estate. The petitioner may be the alleged incompetent's spouse, a relative, a creditor, a debtor, or, any person interested

of Allegheny County Pennsylvania, in a case entitled: *"In re: Estate of Cora Hubbard Williams, An Incompetent"*, No. 2750 of 1955 in the Orphans' Court and in a case brought by Mrs. Williams, pursuant to 17 P.S. § 41, to the Supreme Court of Pennsylvania at its Miscellaneous No. 2428. By a decree of the Orphans' Court of July 6, 1955, Mrs. Williams had been adjudged incompetent and co-guardians of her estate were appointed as will appear hereinafter.

The defendants-appellees in the case at bar are the co-guardians of Mrs. Williams' estate who, it is asserted, were erroneously appointed by the Orphans' Court of Allegheny County. The co-guardians are respectively the Commonwealth Bank and Trust Company, a Pennsylvania corporation doing business in Pittsburgh, and Mrs. Williams' daughter, Mrs. Murdoch, who resides in Haverford, Pennsylvania. In the suit at bar Mrs. Williams asserts that her daughter, Mrs. Murdoch, instituted the incompetency proceedings against her not in her best interest as required by law but against those best interests and for "the nefarious purpose of procuring the control of her multi-million dollar estate for her [daughter's] greedy and selfish unjust enrichment."

Mrs. Williams asserts that the proceedings in the Orphans' Court of Allegheny County were proceeded with *ex parte*[2] and without notice to her; that she was thus denied the right to counsel and witnesses and to be heard in advance of the judgment; that if she had been heard and had been able to subject certain expert witnesses to cross-examination, the adjudication of incompetency would not have been made by the Orphans' Court. Mrs. Williams asserts also that all adversary witnesses unduly profited financially from their participation "in the unlawful combination" to deprive her of federally guaranteed rights as alleged.

There have been other attempts to nullify the adjudication of July 6, 1955 prior to the suit at bar. In about the middle of 1961, the exact date not being set out in briefs or in the record, it appears that an application was made to the Orphans' Court for relief against the adjudication of July 6, 1955, together with a petition for adjudication of competency; that this petition was supported by statements of psychiatrists who were prepared to testify that Mrs. Williams was legally and mentally competent and did not need any guardians of her estate and would not become the

in the alleged incompetent's welfare. Notice of the petition and hearing shall be given, in such manner as the court shall direct, to the alleged incompetent, to all persons residing within the Commonwealth who are sui juris and would be entitled to share in the estate of the alleged incompetent if he died intestate at that time, and to such other parties as the court may direct. The alleged incompetent shall be present as the hearing unless (1) the court is satisfied, upon the presentation of positive testimony, that, because of his physical or mental condition, his welfare would not be promoted by his presence * * *."

2. The court below in its opinion in this case points out that the Orphans' Court directed that the notice of the petition and the hearing be given to Mrs. Williams, who at the time was an inmate of the New Jersey State Hospital at Trenton. In its order of adjudication of incompetency, as also appears from the

opinion of the court below, the Orphans' Court stated that "notice of said hearing was given as required" and that Mrs. Williams, at that time, *viz.*, July 6, 1955, "because of her present mental condition is unable to manage her property and is liable to dissipate it or become the victim of designing persons," and that "upon the basis of the testimony of Drs. J. B. Spradley [of the Trenton State Hospital staff] and Edward A. Strecker [of Philadelphia, now deceased] that the presence of said Cora Williams in Court would be detrimental to her welfare."

In 1955, it appearing that one of the orginal co-guardians, Mellon National Bank, might be subject to a conflict of interest, Mellon National Bank asked leave to resign as co-guardian of Mrs. Williams' estate. Mrs. Williams joined in the prayer of that petition. On October 7, 1955 the Orphans' Court substituted the Commonwealth Bank and Trust Company as co-guardian for Mellon National Bank.

victim of designing persons. In the suit at bar Mrs. Williams asserts that the Orphans' Court refused to have a hearing on this petition "without any justification whatever", unless and until the petitioner, Mrs. Williams, would submit to re-examinations by "hostile and adversary psychiatrists" who had testified against her at the original *ex parte* hearing. Under these circumstances, described as "perilous and precarious" in her brief in this court, Mrs. Williams abandoned her petition.

On June 19, 1962, Mrs. Williams again petitioned the Orphans' Court, at its No. 2570 of 1955, to vacate its order of July 6, 1955 appointing guardians and to grant other relief. This petition was presented to President Judge Boyle and it was prayed that a citation be issued to the Commonwealth Bank and Trust Company and to Mrs. Murdoch, the co-guardians, to show cause, if any, why the order of the court appointing guardians for Mrs. Williams should not be vacated for fraud and misconduct "of the adversaries of Mrs. Williams in obtaining it," and also because the Orphans' Court had no jurisdiction over Mrs. Williams for lack of service upon her. Mrs. Williams also sought to surcharge the co-guardians for "gifts" allegedly illegally made by them, a final accounting from them, and for an order to have her property and estate returned to her. In the suit at bar it is alleged that Judge Boyle, without issuing a *citation in accordance with* the usual procedure, entered an order dismissing this petition and not adjudicating any of the issues raised therein. Shortly thereafter Mrs. Williams filed a petition to the Supreme Court of Pennsylvania, which according to her allegations was "arbitrarily and summarily" dismissed by that Court without opinion or assigning reasons therefor. According to Mrs. Williams the Supreme Court refused to compel the Orphans' Court to perform the functions required of it by law.

After the dismissal by the Orphans' Court of the petition of June 19, 1962 for an adjudication of competency and for other relief, the nature of which will be more fully set out hereinafter, exceptions to the decree of dismissal on behalf of Mrs. Williams were filed by her present counsel. These, however, were withdrawn on his own motion, upon order of the Court, "with prejudice", counsel stating in his brief in this court that this was done in order to avoid delays and because "it had become convincingly evident that the entire Orphans' Court is determined that the plaintiff * * * [Mrs. Williams] in the instant case would not be afforded her right to the sought [sic] hearing on the issue of the fraud and misconduct of her adversary on the procurement of the incompetency adjudication. * * * "

In her complaint in the court below Mrs. Williams makes a number of allegations as to the actions and rulings of the Orphans' Court in the original proceeding had pursuant to the Pennsylvania Incompetents' Estates Act of 1951 and also as to the actions and rulings of the Orphans' Court in the proceedings conducted upon the filing of the petition seeking an adjudication of competency. Some of these are extremely sweeping in nature. The court and its presiding judge were accused of unconstitutional and illegal behavior. But even taking these allegations at their broadest, Mrs. Williams does not accuse the Orphans' Court of fraudulent conduct. The complaint does allege that "Judge Boyle, without right or justification, substituted his advice for that of your plaintiff's counsel and then attempted to compel the plaintiff to follow it, or be entirely deprived of her right to a Day in Court. Such unconstitutional deprivation was the result of that jurist's actions who at all times made it plain to counsel for your plaintiff, that he would consider only a petition on her behalf for 'restoration' of competency and on his own terms and conditions." But it must be pointed out also that nowhere in the complaint filed in the court below does Mrs. Williams attack the constitutionality of any of the provisions of the Pennsylvania Incompetents' Estates Act of 1951.

The complaint and the exhibits, incorporated therein by express reference (the exhibits having been made part of the record by the defendants by a so-called "Document Appendix") [3], assert in substance what has been set out hereinbefore. The defendants, the co-guardians, moved to dismiss pursuant to Rule 12(b), Fed.R.Civ.Proc., 28 U.S.C., on the ground that the matters raised in the complaint had already been adjudicated in favor of the defendants by the Orphans' Court of Allegheny County and by the Supreme Court of Pennsylvania, and therefore were and are res judicata.

An order was entered granting the defendants' motion and dismissing the complaint on the ground that the issues presented were res judicata. A motion for reconsideration was filed by the plaintiff, Mrs. Williams, which was denied. The appeal at bar followed.

■ Before embarking upon a discussion of the application of the principle of res judicata, a procedural point must be cleared up. Mrs. Williams contended in the court below and contends in this court that the issue on which the case was decided by the court below, res judicata, cannot appropriately be raised by a motion to dismiss under Rule 12(b), Fed.R.Civ.Proc. 28 U.S.C., but must be pleaded by way of an affirmative defense under Rule 8(c). It is a fact that Rule 8(c) speaks of res judicata as an affirmative defense which must be asserted under Rule 8(c). But this court in Hartmann v. Time, Inc., 166 F.2d 127, 131, 1 A.L.R.2d 370 (1948), held that the defense of res judicata might be raised by motion to dismiss or by an answer. See note 3 cited to the text of the Hartmann opinion. In the case at bar there was no answer. The defense of res judicata, therefore, could be asserted successfully at the early stage of this proceeding if it were valid.

As has been said, Mrs. Williams twice petitioned the Orphans' Court to vacate the order of July 6, 1955 adjudicating her to be an incompetent. The exact disposition of the first petition is not disclosed by the record but apparently its prayers were not pressed, perhaps because Mrs. Williams was unwilling to submit to an examination by psychiatrists to be appointed by the Orphans' Court. The second petition was filed by her on June 19, 1962. In it Mrs. Wil-

---

3. The defendants have filed a so-called "Document Appendix" which is certified as containing documents which are "true and correct" copies of original records of the Orphans' Court and of the Supreme Court of Pennsylvania. The certification has been made by Robert W. Dugan, Esquire, and John Stewart, Jr., Esquire, counsel for the defendants-appellees in the case at bar. It is not clear how the "Document Appendix" came into the record but it is marked filed by the Clerk of Court. With one exception there is no assertion or allegation that the records are not what they purport to be. That exception is that plaintiff's counsel refused to accept the authenticity of the plaintiff's signature to "Exhibit 'C'", "Consent and Joinder of Incompetent to Appointment of a Substituted Co-Guardian." We will omit Exhibit "C" from our consideration and treat the other exhibits in the "Document Appendix" as accurate and sufficient for the purposes of this appeal.

Portions of the "Document Appendix" are illegible. Other parts can be read only with great difficulty. The "Document Appendix" is incomplete and inadequate for the purposes for which it was offered and is barely sufficient to enable us to reach the conclusions expressed in this opinion. The court below should not have permitted the "Document Appendix", apparently offered by the defendants, co-guardians of Mrs. Williams' estate, to have been filed by the Clerk of Court in such inadequate form. A United States Court of Appeals is entitled to have, and this court must and will have, a plain, properly prepared and legible record before it on every appeal. We state that should we again encounter in this case or in any other case as insufficient a record as that which we presently have before us, we may dismiss the appeal for failure to observe the provisions of our Rule 24, which, though not expressly stating that a record should be legible, implies as much. Compare paragraphs (9) and (10) of our Rule 24.

liams alleged fraud and conspiracy on the part of her daughter, Mrs. Murdoch, and others, to procure the original adjudication of incompetency and to secure control of her estate. She also asserted that no personal service was made upon her as required by order of court and that, had she appeared, she would have been able to establish both her competency and her ability to manage her estate. She alleged also that she was deprived of her property without due process of law in that she did not have notice of the hearing and an opportunity to be heard in advance of the judgment of incompetency entered by the Orphans' Court.

The final paragraph of the petition should be quoted here. It states: "As a result of the combination and scheme instigated by petitioner's daughter, as aforesaid, your petitioner [Mrs. Williams] has been deprived of the fundamentals of due process of law, which are notice and the right to be heard in advance of judgment in a properly constituted hearing wherein she is afforded her procedural and substantive rights. Thus your petitioner has been deprived of her rights under the Constitution and laws of the United States."

As we have said, the Orphans' Court by Presiding Judge Boyle dismissed Mrs. Williams' petition for adjudication of competency and for other relief including that referred to in the last paragraph of his opinion. In this opinion Judge Boyle reviewed the circumstances under which the co-guardians for Mrs. Williams' property were appointed by the Orphans' Court on July 6, 1955. He pointed out that the objections to the administration of Mrs. Williams' estate had been passed upon and that the first account of the co-guardians had been audited and confirmed on September 2, 1958 after extensive hearings. He said that the Court should take judicial notice that within the past two years Mrs. Williams had employed, successively, at least 15 lawyers, and referring to the prior petition to have her adjudicated competent, pointed out that Mrs. Wil-

liams had discharged her counsel when the Orphans' Court had requested that she be reexamined by psychiatrists designated by the Court.

Judge Boyle also stated that the petition contained scurrilous, scandalous, and impertinent averments and that Mrs. Williams had notice of the proceedings and that he could dispense with her presence pursuant to the provisions of 50 P.S. § 1681. He said further that though the petition for annulment of the judgment of July 6, 1955 alleged fraud and conspiracy "in amorphous terms" it did not challenge the honesty, veracity, or integrity of the medical testimony upon which the Court relied in adjudicating Mrs. Williams an incompetent. He also stated, "Indeed, scrutiny of the record shows that the entire proceeding was carried out in good faith and with scrupulous regard for her [Mrs. Williams'] rights." He went on to say: "Since the petition before the Court contains impertinent and irrelevant scandalous matter, it will be dismissed without prejudice to the right of the petitioner to present a petition to the Court for an adjudication of competency."

He also held that the petition was supported by a false affidavit and therefore was defective under the Orphans' Court practice. In this connection he stated: "The Court, therefore, must treat the present petition as one not verified and defective under our practice. *Failure to verify a petition is fundamental error and no decree can be entered thereon.*" (Emphasis added.)

Judge Boyle concluded by stating: "As for the present petition which charges a fraudulent conspiracy in the appointment of guardians of the estate of the incompetent, the Court believes that the record provides a resounding answer and proclaims the honesty of the proceeding from beginning to end. The present petition is being used solely to engender hatred within a family. It should not be permitted to sully the records of the Orphans' Court."

Exceptions were timely filed by Mrs. Williams. These exceptions attacked the

adjudication of the Orphans' Court on the specific ground that it had denied Mrs. Williams due process of law. Shortly thereafter, as we have said, Mrs. Williams' counsel moved to withdraw the exceptions and about four months later Judge Boyle in open court granted the motion for withdrawal of the exceptions and ordered that they be withdrawn "with prejudice". We point out that Mrs. Williams' present counsel filed the second petition, filed the exceptions to the decree entered by President Judge Boyle, moved for the withdrawal of the exceptions, and permitted the exceptions to be withdrawn "with prejudice" without objection.

No appeal was taken from the judgment of the Orphans' Court, but, as we have indicated, on June 29, 1962, Mrs. Williams filed with the Supreme Court of Pennsylvania an action (at its Miscellaneous Docket No. 2428) designated in the "Document Appendix" as an "original action", pursuant to the Act of 1836, P.L. 784, § 1, 17 P.S. § 41, praying that Court to exercise general supervisory powers and grant the plaintiff relief on grounds substantially similar to those asserted by Mrs. Williams' petition for an adjudication of competency in the Orphans' Court. The Supreme Court of Pennsylvania granted motions to dismiss and to quash the petition and did dismiss and quash it. A motion for rehearing and reconsideration filed by Mrs. Williams was denied. Why the Supreme Court dismissed the petition we do not know for it handed down no opinion.

Section 1738, 28 U.S.C., sometimes known colloquially as the "Federal Res Judicata Act", provides: "The Acts of the legislature of any State, Territory, or Possession of the United States, or copies thereof, shall be authenticated by affixing the seal of such State, Territory or Possession thereto.

"The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.[4]

"Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

■■ The Act cited makes the concept of the full faith and credit clause of Section 1 of Article IV of the Constitution applicable in a federal court when the first suit has been in a state court and the second is in a federal court. See American Surety Co. v. Baldwin, 287 U.S. 156, 166, 53 S.Ct. 98, 77 L.Ed. 231 (1932), and "Preclusion/Res Judicata", 62 Mich.L.Rev., pp. 33–38. See and compare Caterpillar Tractor Co. v. International Harvester Co., 120 F.2d 82, 86, 139 A.L.R. 1 (3 Cir. 1941). The coguardians, the defendants-appellees herein, appear to be of the opinion that the law of res judicata as determined by the courts of Pennsylvania must govern the instant case. The plaintiff-appellant seems to be of the same view. We need not discuss now the question whether the federal law or that of Pennsylvania governs. It is established law, whether that of the federal courts[5] or of the

---

4. We will not treat the absence of the sealed records of the judicial proceedings in the Orphans' Court and in the Supreme Court of Pennsylvania as jurisdictional. The appellees-defendants have seen fit to disregard this feature of the Act as did the court below. We shall do the same for the purpose of this appeal since the validity of these records has not been objected to. See note 3, supra.

5. See Flood v. Besser Co., 324 F.2d 590, 591 (3 Cir. 1963); Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195 (1876); Angel v. Bullington, 330 U.S. 183, 192–193, 67 S.Ct. 657, 91 L.Ed. 832 (1947); and Anselmo v. Hardin, 253 F.2d 165, 168

Pennsylvania tribunals[6], under the doctrine of res judicata, that ordinarily a final judgment for the defendant in a prior suit between the same parties or their privies covering the same subject matter bars the plaintiff from re-litigating the cause of action determined by such a judgment. There is sufficient in the present record, inadequate at it is in many particulars, to demonstrate that the same issues, including the all-important one of due process of law, based upon the same operative facts, could have been litigated by and between Mrs. Williams and her co-guardians in the Orphans' Court of Allegheny County in the proceedings arising out of Mrs. Williams' petition filed on June 19, 1962. But was this issue litigated?

■ A careful scrutiny of Judge Boyle's opinion compels the conclusion that he made no adjudication of any issue presented by Mrs. Williams' second petition for adjudication of competency and for the relief which she asserts was due her because, she alleged, she was deprived of her rights under the Constitution and laws of the United States. As appears from the words of Judge Boyle's opinion, italicized above, he was of the view that the petition was defective under the Orphans' Court practice because of fundamental error in failing to verify it and that therefore no adjudicatory decree could be entered thereon. Although Judge Boyle stated, in effect, that Mrs. Williams had not been denied due process by the Orphans' Court, that Court did not in our opinion adjudicate this issue.

■ Moreover the record before us does not show that Judge Boyle issued a rule to show cause, or that he had a

hearing on the second petition, or that he gave Mrs. Williams an opportunity to present evidence in support of its allegations. The record, on the other hand, does not show that Mrs. Williams made an effort to offer evidence on her own behalf assuming that she was given an opportunity to present it. For the purpose of this review, we will take the position most unfavorable to the Orphans' Court and assume that it proceeded without a hearing and did not give Mrs. Williams an opportunity to present evidence in proof of the allegations of her petition. It is not sufficient answer to say that Mrs. Williams waived her rights when her counsel permitted his exceptions to be withdrawn with prejudice. The defense to the suit at bar is res judicata, but there can be no res judicata if there was no determination of Mrs. Williams' rights and there could have been no such determination if she did not have an opportunity to be heard and to present evidence: in short, if there had been no adversary proceeding. Quite aside from the fact that Judge Boyle concluded that the Orphans' Court did not have jurisdiction and could not enter a decree because of the defect of Mrs. Williams' second petition, viz., the false affidavit referred to, we are compelled to hold on the present record that the proceeding in the Orphans' Court was not of a substantially adversary nature as that term is understood in the law.

■ The co-guardians strongly contend, however, that quite apart from the proceedings in the Orphans' Court, the decision of the Supreme Court of Pennsylvania in the proceedings brought pursuant to 17 P.S. § 41[7], at its Miscel-

(3 Cir. 1958). Compare the application of the principle of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) in our decision in Caterpillar Tractor Co. v. International Harvester Co., 120 F.2d 82, 84–86, 139 A.L.R. 1 (1941).

6. See Siegfried v. Boyd, 237 Pa. 55, 59, 85 A. 72, 73 (1912); Lance v. Mann, 360 Pa. 26, 60 A.2d 35 (1948); Federal Land Bank of Baltimore v. Putnam, 350 Pa.

533, 39 A.2d 586, certiorari denied 324 U.S. 882, 65 S.Ct. 1026, 89 L.Ed. 1433, rehearing denied, 325 U.S. 894, 65 S.Ct. 1191, 89 L.Ed. 2005 (1944); and Fleming v. Strayer, 367 Pa. 284, 80 A.2d 786 (1951).

7. 17 P.S. § 41 provides as follows: "General appellate jurisdiction; process for recovery of costs: The supreme court of this commonwealth shall have power to hear and determine all, and all man-

laneous No. 2428, constitutes a res judicata of the due process issue presented to the court below. We cannot agree. The statute referred to is of ancient origin and came into the law of Pennsylvania as Section 13 of the Act of 1722, 1 Sm.L. 131, and has remained substantially unchanged to the present day. It was enacted in its present form in 1836, being Section 1 of P.L. 784. The statute's most recent interpretation by the Supreme Court of Pennsylvania was in Commonwealth v. Harris, 409 Pa. 163, 185 A.2d 586 (1962), which involved a criminal contempt committed in the presence of a Court of Quarter Sessions of Pennsylvania, allegedly by giving false testimony during the course of a trial. It is clear from the decision that the Supreme Court of Pennsylvania, pursuant to 17 P.S. § 41, has all jurisdictions and powers of the Courts of King's Bench, Common Pleas, and of the Exchequer, of England, including the power to superintend inferior tribunals. See Bell Appeal, 396 Pa. 592, 152 A.2d 731 (1959), quoted by Mr. Justice O'Brien in the Harris opinion.

In Commonwealth v. Onda, 376 Pa. 405, 103 A.2d 90 (1954), Mr. Chief Justice Stern in another earlier criminal case had interpreted the Act. He stated, 376 Pa. pp. 408–410, 103 A.2d 91–92: "More than two centuries ago section XIII of the Act creating the Supreme Court of this Commonwealth, Act of May 22, 1722, 1 Sm.L. 131, 17 P.S. § 41 note, provided that the court should 'minister justice to all persons, and exercise the jurisdictions and powers hereby granted concerning all and singular the premises

according to law, as fully and amply, to all intents and purposes whatsoever as the justices of the court of king's bench, common pleas, and exchequer, at Westminster, or any of them, can or may do.' Thus the power of superintendency over inferior tribunals became vested in this court from the very time of its creation. Commonwealth v. Ickhoff, 33 Pa. 80, 81; Carpentertown Coal & Coke Co. v. Laird, 360 Pa. 94, 99, 61 A.2d 426, 428, 429. What were the 'jurisdictions and powers' of the Justices of the Court of King's Bench thus conferred upon the Supreme Court? It is said in Blackstone, Book 3, ch. 4 § 42, that 'The jurisdiction of this court [Court of King's Bench] is very high and transcendent. It keeps all inferior jurisdictions within the bounds of their authority, and may either remove their proceedings to be determined here, *or prohibit their progress below.* * * * It protects the liberty of the subject, *by speedy and summary interposition.*' Subsequent legislative enactments did not derogate from the powers granted to the Supreme Court by the 1722 Act but rather confirmed and enlarged them. [Rhymer's] Rimer's Contested Election, 316 Pa. 342, 346, 175 A. 544, 545. Thus the Act of June 16, 1836, P.L. 784, Section 1, 17 P.S. § 41, provided that 'The supreme court of this commonwealth shall have power to hear and determine all, and all manner of pleas, plaints, and causes which shall be brought, or removed there from any other court of this commonwealth, by virtue of any writ or process issued by the said court, or any judge thereof, for that purpose, in the manner now prac-

ner of pleas, plaints, and causes which shall be brought, or removed there from any other court of this commonwealth, by virtue of any writ or process issued by the said court, or any judge thereof, for that purpose, in the manner now practiced and allowed, to examine and correct all and all manner of errors of the justices, magistrates, and courts of this commonwealth, in the process, proceedings, judgments and decrees, as well in criminal as in civil pleas or proceedings, and thereupon, to reverse, modify, or affirm such judgments and decrees, or

proceedings, as the law doth or shall direct; and generally, to minister justice to all persons, in all matters whatsoever, as fully and amply, to all intents and purposes, as the said court has heretofore had power to do, under the Constitution and laws of this commonwealth; and shall have power, and is required to issue execution, or other process, for the recovery of costs which have accrued, or may accrue in said supreme court, as well as in all cases which have been heretofore decided."

tised and allowed, to examine and correct all, and all manner of errors of the * * courts of this commonwealth, in the process, proceedings, judgments and decrees, as well in criminal as in civil pleas or proceedings, and thereupon, to reverse, modify or affirm such judgments and decrees, or proceedings, as the law doth or shall direct; and generally, to minister justice to all persons, in all matters whatsoever, as fully and amply, to all intents and purposes, as the said court has heretofore had power to do, under the Constitution and laws of this commonwealth; * * *.'

"In Commonwealth v. Balph, 111 Pa. 365, 375, 377, 3 A. 220, 225, it was said: 'It will be observed that the act of 1722 expressly confers upon this court the powers of the king's bench in criminal cases. This is plain from the language of the act itself and authority is scarcely needed for so plain a proposition. * * It [the King's Bench] possesses the inherent power of removing by certiorari the record and proceedings of any criminal case from the inferior courts *at any stage of the proceedings.*'

"The Constitution of 1874, P.S., made no change in the broad powers of the Supreme Court as thus stated. * * *

"In Gosline v. Place, 32 Pa. 520, 523, * * * it was said: 'The judicial authority of this court extends to the review and correction of all proceedings of all inferior courts, except where such review is expressly excluded by statute, in accordance with the constitution; and we may issue all sorts of process, and use and adopt all sorts of legal forms that are necessary to give effect to this supervisory authority.' "

It appears from the foregoing that Section 41 confers general appellate jurisdiction on the Supreme Court of Pennsylvania and at least the necessary supervisory powers to issue certain writs in aid thereof. We use the phrase "at least" advisedly for the powers conferred by Section 41 may go further than this but we are confident that such further powers as the Supreme Court may possess pursuant to the statute are not pertinent to the issues presented by the case at bar. But it is clear that the powers of the Supreme Court of Pennsylvania are limited by Section 3 of Article 5 of the Constitution of Pennsylvania, P.S.[8] See also Pennsylvania Law Encyclopedia, Courts, §§ 141–146, 148. Cf. McGlinn's Estate, 270 Pa. 373, 113 A. 548 (1921).

Mrs. Williams' petition to the Supreme Court, which sets up the alleged failure of the Orphans' Court to perform its duties and to relieve her of that Court's asserted refusal to accord to her due process of law, seeks an exercise by the Supreme Court of its supervisory powers and also seems to be an appeal from the dismissal of the petition filed in the Orphans' Court. But the proceeding brought to the Supreme Court was bottomed expressly on 17 P.S. § 41. It was not brought pursuant to 20 P.S. § 2080.-771 and 17 P.S. § 191.4(3). The precise nature of the relief sought by her is not clear nor are the reasons why the Supreme Court dismissed and quashed the petition filed to it. If the relief sought by Mrs. Williams was a writ of the nature of a writ of mandamus to compel the Orphans' Court to perform what Mrs. Williams considered to be its duty, the Supreme Court's failure to grant the writ could not constitute an adjudication of the issue of due process.

If it be found that Mrs. Williams sought appellate review of the dismissal of her petition by the Orphans' Court,

8.  Section 3 of Article 5 provides: "The jurisdiction of the Supreme Court shall extend over the State, and the judges thereof shall, by virtue of their offices, be justices of oyer and terminer and general jail delivery in the several counties; they shall have original jurisdiction in cases of injunction where a corporation is a party defendant, of *habeas corpus*, or *mandamus* to courts of inferior jurisdiction, and of *quo warranto* as to all officers of the Commonwealth whose jurisdiction extends over the State, but shall not exercise any other original jurisdiction; they shall have appellate jurisdiction by appeal, *certiorari* or writ of error in all cases, as is now or may hereafter be provided by law".

the Supreme Court may well have concluded, as did we, that the Orphans' Court had not adjudicated any issues presented by Mrs. Williams' second petition since that court considered it was without jurisdiction to do so because of the false affidavit and that therefore there was nothing before the Supreme Court on which its appellate jurisdiction could operate: in short, that the Orphans' Court did not and could not enter a "decree". If the Supreme Court reached a conclusion that the dismissal by the Orphans' Court did constitute an adjudication and that its order dismissing was a "decree" (a conclusion we think the Supreme Court could not have reached under the circumstances), the Supreme Court may also have concluded that because Mrs. Williams had allowed the exceptions filed by her to the dismissal of her petition by the Orphans' Court to be entered "with prejudice" that she had abandoned the appeal process.

Another possible alternative is that the Supreme Court dismissed or quashed the petition filed to it because it concluded that the petition contained what the Court deemed to be scandalous and scurrilous matter.

In any event, since the Supreme Court filed no opinion we cannot tell with exactitude the reason why it dismissed and quashed Mrs. Williams' petition, but we think it clear that it did not adjudicate the matters contained in the petition. The plea of res judicata cannot be sustained upon the action taken by the Supreme Court of Pennsylvania complained of by Mrs. Williams.

We do not pass upon the substantiality of the federal question or upon the asserted failure of the Orphans' Court to obtain personal jurisdiction over Mrs. Williams as required by the Orphans' Court Act of August 10, 1951, P.L. 1163, 20 P.S. § 2080.704 in the light of Hicks Estate, Pa., 199 A.2d 283.* Sufficient operative facts do not clearly appear in the present record to permit us to do so.

* Hicks Estate was decided by the Supreme Court of Pennsylvania for the Western

Other issues raised by the parties do not require discussion in this opinion.

Accordingly, the judgment of the court below will be reversed and the case remanded for appropriate action.

District, March 9, 1964, Nos. 49, 50, and 51.